First National Bank of Omaha, plaintiff in error, v. William Lierman, defendant in error.

1 **Evidence:** PROOF OF HANDWRITING. A witness who is acquainted with the handwriting of a person whose signature is in dispute, although not an expert in judging of handwriting, is competent to give his opinion as to its genuineness.

2. ———: ———. But a witness who is not an expert, and who has no knowledge either of the handwriting, or the signature, is not competent to give such an opinion from a comparison of hands.

3. ———: ———: SIGNATURE FALSELY OBTAINED. If the signature of an illiterate person be obtained to a promissory note by fraudulently inducing him to believe that he is signing a different instrument, with no fault on his part, such note will be void even in the hands of a *bona fide* holder.

4. ——: ——: EVIDENCE IN SUCH CASE. In determining whether the signature was so obtained it is proper for the jury to take into consideration all the facts and circumstances attending the transaction, in which the signature was obtained.

ERROR from the district court of Cuming county. The facts necessary to an understanding of the case are stated in the opinion.

*Uriah Bruner,* for plaintiff in error, cited Story on Bills, 14, 189, 191, 193, 417. *Shirts v. Overjohn,* 60 Mo., 305. *Chapman v. Rose,* 56 New York, 137. *Putnam v. Sullivan,* 4 Mass., 45. *Douglass v. Matting,* 29 Iowa, 498. *Zimmerman v. Rote,* 75 Penn. State, 188. *Reed v. Arnold,* 10 Kan., 102. *Whitaker v. Parker,* 42 Iowa, 585. *King v. Donahue,* 110 Mass., 155. *Ellingwood v. Bragg,* 52 New Hamp., 488.

*Crawford & McLaughlin,* for defendant in error, cited *Briggs v. Ewart,* 51 Mo., 245. *Gibbs v. Linabury,* 22 Mich., 479. *Kellogg v. Steiner,* 29 Wis., 626. *Chapman v. Rose,* 44 How. Pr., 364. *Schuylkill County v. Copley,* 67 Penn. St., 386. *Detwiler v. Bish,* 44 Ind., 70. *Taylor v. Atchison,* 54 Ill., 196.

LAKE, CH. J.

The action in the district court was brought by the plaintiff in error, as the indorsee of a promissory note, purporting to have been given on the sale of certain personal property by the payee to the defendant. In his amended answer, the defendant denies the execution of the note; and, in addition thereto, alleges, that if his genuine signature is in fact attached to the note, it was, in some manner unknown to him, fraudulently obtained by one John King during certain negotiations concerning a patent hay fork, which he had undertaken to sell on commission.

The errors assigned, and relied on in the argument, occurred during the trial of the cause: *first*, in the admission of certain testimony on behalf of the defendant; and, *second*, in one of the instructions given to the jury, and also in the refusal of the court to give several instructions tendered on behalf of the defendant. It will be most convenient to notice these points in the order of their occurrence on the trial.

It appears, that one D. S. Crawford was called as a witness to prove that the signature to the note was not made by the defendant. On behalf of the plaintiff it was objected to the competency of this witness, that it had not been shown, that he was acquainted with the handwriting of the defendant. The witness then answered, that he was acquainted with his handwriting "to a considerable extent." That he had "been more particularly acquainted with his handwriting about a year." He was not cross-examined as to the means of his knowledge. Thereupon he was asked, as to his belief of the genuineness of the signature in question; and answered, under a similar objection to his competency, that, "There is some similarity to the signature on this note, and other signatures that I have examined, but I do not think from my knowledge of his handwriting, that the signature on this note is genuine." There was no error in the admission of this testimony. The witness, although not an expert, was, nevertheless, acquainted with the defendant's handwriting, which made him competent to give his opinion as to the genuineness of the disputed signature.

The defendant next produced E. K. Valentine on the same point; who, after testifying that he was an attorney at law, and for several years before entering the profession had been in the employ of the general government, in the quartermaster's department, and in a land office, but showing no knowledge whatever of either the handwriting, or the signature of the defendant, was asked

this question: " Have you compared the signature to the note sued upon to the one in exhibit A, and the ones to the pleadings in this case, and, if you have, what is your opinion as to the genuineness of the signature to the note sued upon?" It was objected to this interrogatory, that the competency of the witness to answer it had not been shown. This objection was overruled, and an exception duly taken. The witness then answered, that " the signatures to the pleadings are very uniform, but they do not agree in formation of the letters, either to those to the note, or to that in exhibit A. The signature to the note and that to exhibit A are more nearly alike as to formation of letters," etc. " From the signatures I have before me, the signatures to the note and pleadings were not written by the same hand." This testimony should have been excluded. The objection to the competency of the witness was well taken, and should have been sustained. The witness was not shown to have been an expert in judging of handwriting, nor in the comparison of hands; nor had he any knowledge whatever of either the handwriting or signature of the defendant, and yet he was permitted to give his opinion, as to the genuineness of the signature in question by comparing it with the signatures of the defendant attached to pleadings in the case. Under the most liberal rule, adopted by the courts of any of the states of the Union, this testimony could not have been received. In *Strother v. Lucas*, 6 Peters, 763, the court lay it down as a general rule, " that evidence by comparison of hands is not admissible when the witness has had no previous knowledge of the handwriting, but is called upon to testify merely from comparison of hands."

Of the several instructions given to the jury, exception was taken to but a single one. This was in these words: " If the jury are of the opinion that the signature to the note is genuine, it devolves upon the defend-

ant to prove that it was obtained by fraud, and for this purpose, the testimony in reference to the contract with King can be used." One of the defenses, set out in the amended answer and relied upon at the trial, was, that if the signature to the note is genuine, then it "was procured through the fraud and circumvention of the said John King, in some way or manner unknown to the defendant, in the transaction above set forth." This transaction was, as claimed by the defendant, and as there was testimony tending somewhat to prove, concerning a certain patent hay fork, which he had agreed to sell for a commission of two dollars per fork. This arrangement was made with said King; and a contract, or what the defendant supposed was a contract, embodying the terms of the agreement, was presented by King for his signature. This, he says, was the only paper which he ever signed in connection with said business. The defendant is an illiterate person, but little acquainted with the English language, and relied entirely upon the assurances of King, as to what the contract which he signed contained. There was considerable testimony bearing upon this arrangement between King and the defendant, and on the theory, that the signature to the note was genuine, a recovery thereon could be prevented only by satisfying the jury, that he had been induced to sign the note solely through the fraud and deception of this man King, in leading him to suppose that he was signing an instrument of a character altogether different. On this theory, we think the testimony concerning the fork transaction was proper to be considered, and that the instruction complained of was substantially correct.

Judgment reversed, and a new trial awarded.

JUDGMENT REVERSED.