Loyd, Appellant, vs. Phillips and wife, Respondents.

*December 17, 1904—January 10, 1905.*

*Equity: Written instruments: Negligence of grantee: Failure to read: Cause of action: Adequate remedy at law.*

1. Plaintiff alleged, among other things, that in exchanging land he deeded his land to defendant and gave him a mortgage of $2,500 on lands conveyed to plaintiff, defendant representing that there was a small incumbrance on the lands conveyed to plaintiff which he would promptly pay; that when plaintiff demanded a warranty deed, defendant's wife exhibited a blank with full covenants, and relying on her promise to prepare such a deed, accepted, without reading, the deed prepared by her, which deed excepted mortgage indebtedness from the covenant against incumbrances; that, as soon as the deed was delivered

to plaintiff, he permitted defendant to take it on his promise: to have it recorded and to "fix up" the incumbrances, and that. defendant had attempted to sell the $2,500 mortgage, refused. to discharge the indebtedness as agreed, and was insolvent. *Held*, that the circumstances excusing plaintiff's failure to ex-- amine the deed before accepting it were sufficient to prevent its being held, as matter of law, that he was inexcusably negligent in that regard, precluding any successful appeal on his part to· the courts for redress.

2. Such facts do not show a mere breach of contract, for the redress· of which legal remedies are amply sufficient, but show a situa- tion where equity jurisdiction should lend its aid in the matter.

APPEAL from a judgment of the circuit court for Outa-- gamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

The plaintiff, for a cause of action, pleaded the following,. in effect:

January 12, 1903, plaintiff owned lands in Outagamie county, Wisconsin (specifying the same) of the value of' $3,000, incumbered to the amount of $1,000. Defendant *John M. Phillips* then owned lands in the same county (speci-- fying the same). The latter represented to the former that there was a small incumbrance on his land, which, in the event of his trading the same for plaintiff's land, he would fix up within a. few days. Relying thereon plaintiff made a verbal agreement with the defendant to the effect that the lat- ter should clear the incumbrance from his land and convey the same to the former in consideration of a mortgage back to secure payment to him by plaintiff a specified sum in the· future of $2,500 and a clear deed of the latter's land. Upon said agreement being made defendant suggested a meeting at his house to consummate the same, he to obtain the presence of a justice of the peace to take the acknowledgment of the papers. Plaintiff acting thereon visited defendant's house,. whereupon the latter's wife, said defendant, *Ada Phillips,.* undertook to draft the deeds and mortgage, suggesting that she had written the descriptions of her husband's land many times and was better able to draw the deed thereof correctly

than any one else.   Thereupon plaintiff's wife in his behalf
said that a full warranty deed according to a form exhibited
by her was what he required, to which said *Ada Phillips* re-
plied that she would make the deed that way.   Thereupon
she prepared the papers for execution.   That being done all
were executed, A. G. McKee, a justice of the peace, taking
the acknowledgments.   Plaintiff, relying upon the assurances
given by said *Ada Phillips,* as aforesaid, completed the trade
without reading the deed given him by said *John M. Phillips.*
As soon as the papers were executed said *John M. Phillips*
was permitted to take them into his possession upon his prom-
ise that he would send them for record and fix up the incum-
brance upon the property conveyed to plaintiff so that the
same would be free from all incumbrances.   The latter did
not again see the deed given to him until some time in the
spring of 1903, when he discovered that instead of being in
accordance with the understanding, the covenant against in-
cumbrances excepted mortgage indebtedness.   Whereupon he
applied to said *John M. Phillips* to clear off such indebtedness
and was assured that it would soon be done.   Had plaintiff
known when the papers were executed that the deed to him
was not drawn in accordance with the agreement, he would
not have completed the trade.   There were in fact upon the
property conveyed to him two mortgages, one for $600, and
one for $1,400.   Said *John M. Phillips* has refused and neg-
lected to pay off and discharge the same as he agreed to do,
and there now remains a mortgage indebtedness of $1,400.
He is financially irresponsible.   He has made efforts to sell
the said $2,500 mortgage, and is so circumstanced that if
plaintiff is compelled to pay the $1,400 mortgage indebted-
ness, aforesaid, he will suffer irreparable damage.

Upon such facts plaintiff prayed for judgment reducing
the $2,500 mortgage to the amount of the incumbrance upon
the land conveyed to him, as stated.   He further prayed for
an injunction restraining said *Phillips,* pending a decision

in the case, from selling the said $2,500 mortgage, and further prayed for such additional relief as to the court might seem just.

The defendants demurred generally to the complaint. The demurrer was sustained and plaintiff appealed.

For the appellant there was a brief by *Weed & Van Doren,* and oral argument by *F. C. Weed.*

*Oliver H. Day,* for the respondents.

MARSHALL, J. The facts alleged in the complaint make a good case for the interference of equity jurisdiction. Respondent obtained appellant's land and obligation for $2,500, secured by a mortgage on land conveyed to appellant in exchange therefor, by representing that there was but a small incumbrance upon the latter land which he would promptly pay off. Instead of the incumbrance being small, it was in excess of one fourth of the value of the property. If we concede for the purposes of the case, that appellant was so negligent respecting his interest, in that he omitted to inform himself as to the amount of the incumbrances, that judicial remedies should not be afforded him to redress the wrong complained of so far as produced by the false representations referred to, yet there is the mistake, or something worse, on respondent's part, in that his agent in his presence, while assuring appellant that she would prepare the deed to be executed by respondent in accordance with a form placed before her, which consisted of a deed with full covenants, inserted in the draft in the covenant against incumbrances an exception as to mortgage indebtedness. It is difficult to see why a court of equity should not relieve appellant from the effects that might otherwise flow from that serious departure from the agreement, since without such relief appellant would be left remediless for the wrong. Slight circumstances excusing appellant's failure to examine the deed before accepting it are sufficient to prevent its being held, as a matter of law, that he

was inexcusably negligent in that regard precluding any successful appeal on his part to the courts for redress. *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246. Such circumstances abundantly appear in the allegations, that appellant intrusted the drawing of the deed to respondent's agent as indicated; that in the face of a full understanding of the matter she failed to draw it in conformity thereto; that respondent obtained possession of the paper so soon after the execution thereof as to leave appellant very little time to discover its infirmity, lulling the latter into a sense of security by offering to act for him in placing the same immediately on record, at the same time assuring him that the incumbrance should be speedily paid off. Respondent suggests that since payment of the mortgage indebtedness was not made a condition precedent to consummating the trade, his promise being taken instead, the delay in redeeming such promise or refusal to do so, was a mere breach of contract, for the redress of which legal remedies are amply sufficient, hence that equity jurisdiction should not lend its aid in the matter. In that counsel fails to give proper effect to the material circumstances, that respondent is insolvent; that the $2,500 mortgage may be by him transferred, and that respondent threatens to do that which, if it were to occur, would render courts of law, and equity as well, incapable of protecting appellant from the consequences of the fraud or mistake. Assuming as we must that all the allegations are true, they exhibit a situation rendering legal remedies entirely inefficient to redress the wrong complained of. To shut the door of equity to appellant would violate the fundamental principle thereof, that equity suffers no wrong rising above mere moral transgressions to go unredressed in face of a seasonable clean-handed application to it for a remedy.

*By the Court.*—The order sustaining the demurrer is reversed, and the cause remanded for further proceedings according to law.