[L. A. No. 1657.    Department One.—October 11, 1906.]

## LOS ANGELES AND REDONDO RAILROAD COMPANY et al., Respondents, v. NEW LIVERPOOL SALT COMPANY, Appellant.

LEASE—OPTION TO PURCHASE—CONSTRUCTION—EXCLUSION OF EXCEPTED AREA—EASEMENT.—A lease by a railroad company of land for

salt works, saving and reserving from the leased premises its railroad track and a space twenty feet in width on either side of the center of the track, and granting an option to purchase the leased premises for a fixed price, does not include within said option any part of the excepted area, and such exception cannot be construed to be merely the reservation of an easement over a part of the leased premises.

ID.—MISTAKE IN DEED—REFORMATION—PLEADING AND PROOF.—Where, by mistake in the deed executed under the option, the excepted area was included therein, it is immaterial whether the mistake was mutual or a mistake of the plaintiff, known or suspected by the defendant; and where the mistake was alleged in each form, the plaintiff was entitled to reformation of the deed upon sufficient proof of either.

ID.—CARELESSNESS IN FAILING TO READ DEED.—The mere failure of a party to read an instrument with sufficient attention to perceive an error or defect in its contents will not prevent its reformation at the instance of the party who executes it thus carelessly. Such carelessness does not constitute a neglect of legal duty, within the meaning of section 1577 of the Civil Code; and the conditions on which the contract may be reformed, specified in section 3399 of the Civil Code, do not require the refusal of relief because the party asking it might have discovered the mistake before signing.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Purcell Rowe, and J. S. Chapman, for Appellant.

Borden & Carhart, for Respondents.

SHAW, J.—This is an action to correct a mistake in a deed executed by the plaintiffs to the defendant. The plaintiff Redondo Improvement Company was merely a nominal party to the deed as well as to this action. In mentioning the plaintiff in this opinion we refer only to the railroad company.

The mistake alleged to have been made consisted of the failure to insert in the description of the property an exception which, if inserted, would have excluded from the description certain territory otherwise embraced within the lines of a tract described in the deed by metes and bounds. The court found that the mistake was made as alleged, and gave

judgment for the reformation of the deed as prayed for. The principal contention upon the appeals, which are taken from the judgment and from the order denying a new trial, is that the evidence does not sustain the finding or judgment.

In July, 1901, the plaintiff executed to the defendant a lease, for the term of seven years, upon certain described property. The lease contained a clause to the effect that at any time during the term the defendant, at its option, might purchase of the plaintiff the leased premises for the price of twelve thousand five hundred dollars. In May, 1902, the defendant elected to buy the property in pursuance of the option. The deed in controversy was executed in compliance with the obligation to convey, which, by the exercise of the option, became operative and binding upon the plaintiff. There is no pretense on the part of the defendant that there was any new or additional agreement or modification of the old agreement, whereby the plaintiff became bound to convey any other property, or greater quantity of land, than was embraced in the option.

The claim of the defendant is that there was no mistake; that the option covered the entire tract of land, including that reserved or excepted from the description in the lease, and that it was therefore in precise accord with the intention of the parties and that it was necessary, in order to comply with the option agreement, that the space of ground reserved from the operation of the lease should be conveyed to the defendant upon the exercise of the option; and that the exception, or reservation, which constituted part of the description in the lease, was purposely and properly omitted from the deed. Unless this construction of the option contract is correct, there can be no doubt that there was a mistake, and that the evidence amply supports the findings and judgment.

We are of the opinion that the option cannot be so construed.

The description of the land leased is as follows: "Situate at Redondo Beach in the county of Los Angeles, state of California, and being a portion of the property known as and called the 'Pacific Salt Works Tract,' a portion of said tract hereby leased being more specifically delineated and described upon the blue print hereunto attached and made a part hereof, the said leased premises being inclosed in red

lines upon said annexed blue print and consisting of two parcels, the larger of which contains, as shown upon said blue print, 17.07 acres of land and the smaller of said parcels, as shown upon said blue print, containing 2.31 acres of land; saving and reserving from the said *leased premises* that portion thereof lying between the tracks of the Los Angeles & Redondo Railway Company, as shown on said blue print, and also saving and reserving a strip of land twenty feet in width, being ten feet on either side of the center line of said railroad tracks as the same are now constructed, excepting, however, such portion of said twenty-foot strip so reserved as is at the date of this indenture occupied by the building or vats of the said lessee.''

The option clause, so far as material, is in these words: ''It is further agreed that at any time during the existence. of this lease the said lessee . . . shall have, and it is hereby granted an option to purchase the said *leased premises,* at the price of $12,500 to be paid in gold coin of the United States at the date of the conveyance of said real property unto said lessee by said lessor.'' (The italics in both clauses are our own.)

The claim of the defendant that the term ''leased premises,'' in the option clause, was therein used in the same inaccurate sense which appears to have been given to it where it is used in the reservation clause in the description, and, consequently, that the option covered the entire area inclosed in the red lines, including the railroad tracks, is shown to be untenable by the context, the surrounding circumstances, and the conduct of the parties, as well as by the natural meaning of the words. Conditions in the lease require the lessee to ''maintain on said leased premises'' the present salt plant, and also require of the lessee a certain method of operation of the ''leased premises,'' and provide that upon a breach of the conditions the lessor may resume possession of the ''leased premises.'' In each of these instances the phrase does not embrace the excepted area. The lessee did not take possession of the railroad tracks, and claimed no right to do so until long after the execution of the deed in question, and the lessor operated the tracks continuously during the whole of the intervening period. The short section of the tracks included within the red lines

was but a small part, in length, of the spur tracks of the plaintiff, and was absolutely necessary to the use of the part extending beyond these lines, and which would be cut off from connection with plaintiff's main line if plaintiff were prevented from crossing the land with its cars. Its traffic over these spur tracks was important and valuable. The short pieces of track within the red lines would be of no substantial value to the defendant. The saving clause in the description is not a reservation of an easement merely over a part of the leased premises. Its effect is to save and except from the operation of the lease the fee of the area between the tracks and for ten feet on each side of the center thereof, and hence the lease did not transfer any estate in that part of the space inclosed in the red lines. That space formed no part of the leased premises, and was not covered by the option clause giving the right to purchase the premises actually leased. (*Sears* v. *Ackerman*, 138 Cal. 586, [72 Pac. 171]; *Butler* v. *Gosling*, 130 Cal. 422, [62 Pac. 596].)

There is therefore no foundation for the defendant's contention that the evidence is insufficient to prove a mistake in the preparation and execution of the deed. It is not important to determine whether it was a mutual mistake or a mistake of plaintiff alone, known or suspected by the defendant. The complaint was in two counts, and alleged the mistake in both forms. If either was proven the plaintiff was entitled to the relief given.

There is no merit in the objection that the mistake was due to the forgetfulness of the attorneys and officers of the plaintiff who drew and executed the deed, or by their neglect in failing to compare the description in the deed as prepared with that in the lease.

The course of decision in this state has not been entirely consistent on the general subject of the effect of neglect as a reason for refusing relief in equity. The decisions in *Hawkins* v. *Hawkins,* 50 Cal. 558; *Senter* v. *Senter,* 70 Cal. 619, [11 Pac. 782]; *Metropolitan L. A.* v. *Esche,* 75 Cal. 513, [17 Pac. 675]; and *Crane* v. *McCormick,* 92 Cal. 181, [28 Pac. 222], are cited by defendant as authority for the proposition that a written contract will not be reformed in equity on the ground of mistake, at the instance of a party who

neglected to read the instrument, when he had a full opportunity to do so before its execution, and the defect is of such a character that he could easily have discovered it if he had read it with attention. The cases do not sustain the proposition to the full extent necessary to its application to the present case, although some expressions might seem to go so far as that. *Hawkins* v. *Hawkins* was criticised and explained in *Wilson* v. *Moriarity,* 88 Cal. 213, [26 Pac. 85]. It was not technically a suit to correct a mistake in the written contract, for the sale of the grain in question. It was an action to cancel the writing and to recover a balance due on the alleged previous verbal contract of sale. The preliminary statement of facts made by the reporter, if correct, would seem to make a clear case of mistake of one party known to the other, in which case, under the principles stated in sections 3399 and 3402 of the Civil Code, the plaintiff might have had the written contract corrected, and might have recovered the balance that would be due according to its terms as revised. Such relief was not asked, and the opinion, which is very general in its terms, seems to treat the cause of action as one founded upon alleged fraud, and applies the principle that, before entering into a contract, one must use the opportunities open to him to discover the facts affecting it, and if he negligently fails to do so, he cannot obtain relief from the fraud which by his neglect he suffered to be practiced upon him. It does not hold that the failure to read a contract with sufficient care to perceive a mistake in its terms, will of itself prevent relief by way of a correction of the mistake. In *Senter* v. *Senter* the mistake as to the description of the land was induced by false statements of the defendant to plaintiff concerning the same, and it was held that the plaintiff was entitled to have the correction made. *Hawkins* v. *Hawkins* is cited, and is declared to be not in point. In *Metropolitan L. A.* v. *Esche,* the alleged mistake was made by sureties in a bond for the performance by the principal of certain duties to the obligee during a term of office. The obligee was not aware of any mistake on the part of the sureties, and accepted the bond and allowed the principal to continue in its service upon the faith of it. There was therefore neither mistake nor fraud of which the sureties could

complain. *Crane* v. *McCormick* was a similar case, but the facts were declared not to make out a case of mutual mistake.

It has been frequently decided that the mere failure of a party to read an instrument with sufficient attention to perceive an error or defect in its contents will not prevent its reformation at the instance of the party who executes it thus carelessly. In *Higgins* v. *Parsons*, 65 Cal. 280, [3 Pac. 881], the plaintiff signed a contract believing that it contained a certain stipulation agreed on. The defendant knew that it did not contain the stipulation, and also knew that the plaintiff believed that it did. The plaintiff had an opportunity to read the contract before signing. It is said that the conditions on which a contract may be reformed are specified in section 3399 of the Civil Code, and that, as that section does not authorize the refusal of such relief because the party asking it might have discovered the mistake before signing, the court is not at liberty to exact such diligence as a condition. Perhaps the court there should have added that the carelessness did not constitute a neglect of legal duty, within the meaning of section 1577 of the Civil Code. In *Wilson* v. *Moriarity*, 88 Cal. 213, [26 Pac. 85], it was held that the neglect of the plaintiff, when the lease was read to her by the notary, to pay sufficient attention to discover that it was for ten years, instead of five years, as she supposed, was not sufficient to defeat her action for its reformation in that particular. In *Sullivan* v. *Moorhead*, 99 Cal. 159, [33 Pac. 796], the deed was executed in compliance with a previous contract of sale, and in that respect it was similar to the case at bar. The contract was for the sale of lots 10, 11, 12, and 13 in a certain block. The deed described the land as lots 10, 11, 12, and *"a part of 13."* The plaintiff read the deed, but did not observe the variance. The court said: "The fact of his having read the instrument would not prevent the court from finding that it was made under a mistake." There are many authorities from other states to the effect that a written contract will be corrected in equity, although the mistake was patent on the face of the document, and could have been discovered if read with attention. (*Albany C. S. I.* v. *Burdick*, 87 N. Y. 46; *Story* v. *Gammell*, 68 Neb. 709, [94 N. W. 982]; *Andrews* v. *Gillespie*, 47 N. Y.

487; *San Antonio* v. *McLane,* 96 Tex. 48, [70 S. W. 201];
*Kelley* v. *Ward,* 94 Tex. 289, [60 S. W. 311]; *Loyd* v. *Phillips,* 123 Wis. 627, [101 N. W. 1092]; *Taylor* v. *Glen Falls
I. Co.,* 44 Fla. 273, [32 South. 887]; *Kilmer* v. *Smith,* 77
N. Y. 226, [33 Am. Rep. 613]; *Snyder* v. *Ives,* 42 Iowa, 162.)

There was, it is true, some negligence on the part of the
plaintiff in the case at bar. But it was an inadvertence of a
character which will sometimes occur in the conduct of men of
prudence and caution. The plat and lease were sent to an
abstract company by plaintiff's attorney with instructions to
prepare a certificate of title and also a description for inser-
tion in the deed. This was done, and the description, written
on a slip of paper, was returned to the attorney, but in some
way not explained the exception mentioned in the lease was not
inserted therein. It was copied into the deed by the typewriter
in this erroneous form. The attention of all the parties was
particularly directed to other features of the transaction and
to other parts of the description, the omission of the exception
clause was not observed by any of them, and all signed the
deed believing that the description therein was the same as in
the lease. The negligence was not so gross as to constitute a
neglect of legal duty, or forfeit the right of either party ag-
grieved to relief from the mistake.

The judgment and order denying a new trial are affirmed.

Angellotti, J., and Sloss, J., concurred.